UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| Consumer Financial Protection Bureau,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>Borders & Borders, PLC; Harry Borders; John Borders, Jr.; and J. David Borders,<br><br>　　　　Defendants. | Case No. __3:13CV-1047-H__<br><br>**COMPLAINT FOR PERMANENT INJUNCTION AND OTHER RELIEF** |

　　　　Plaintiff, the Consumer Financial Protection Bureau ("CFPB" or "Bureau"), alleges:

　　　　1.　　The Bureau brings this action under (1) Section 1054 of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. § 5564; and (2) Section 8 of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2607, and its implementing regulation, Regulation X, 12 C.F.R. part 1024 (formerly codified at 24 C.F.R. part 3500) (collectively, "RESPA"), to obtain permanent injunctive relief, an accounting and disgorgement of all ill-gotten gains, and other relief as set forth below.

　　　　2.　　Defendants Borders & Borders, PLC; Harry Borders; John Borders, Jr.; and J. David Borders (collectively, "Defendants") violated RESPA by arranging for the giving of, and giving, kickbacks in exchange for referrals of customers for real estate settlement services involving federally related mortgage loans. The kickbacks – paid to owners and managers of local real estate and mortgage brokerage companies who referred business to Borders & Borders, PLC – were disguised as profit distributions made by title insurance companies created and operated by the Defendants and jointly owned by the referring entities.

## JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction over this action because it is "brought under Federal consumer financial law," 12 U.S.C. § 5565(a)(1); asserts violations of RESPA, 12 U.S.C. § 2614; presents a federal question, 28 U.S.C. § 1331; and is brought by an agency of the United States, 28 U.S.C. § 1345.

4. Venue is proper in this District because Defendants are located and do business in this District, 28 U.S.C. §§ 1391(b) and (c), and 12 U.S.C. § 5564(f); and because at least some of the properties involved in the RESPA violations are located in this District and the violations occurred in this District, 12 U.S.C. § 2614.

## PARTIES

5. Plaintiff CFPB is an independent agency of the United States Government created by statute. 12 U.S.C. § 5491(a). Section 1061(b)(7) of the CFPA, 12 U.S.C. § 5581(b)(7), transferred to the Bureau all consumer protection functions originally granted to the Secretary of the Department of Housing and Urban Development ("HUD") relating to the enforcement of RESPA, and Section 1098(7) of the CFPA amended Section 8(d)(4) of RESPA, 12 U.S.C. § 2607(d)(4), to authorize the Bureau to bring actions to enjoin violations of Section 8.

6. The Bureau is authorized to take appropriate enforcement action to address violations of "Federal consumer financial law," 12 U.S.C. §§ 5511(c)(4), 5512(a), and 5564(a), which includes RESPA as an "enumerated consumer law." 12 U.S.C. § 5481(12)(M), (14).

7. Defendant Borders & Borders, PLC, is a law firm in Louisville, Kentucky that conducts real estate closings and issues title insurance in an agency capacity for at least three title insurance companies.

8. Defendants Harry Borders, John Borders, Jr. and J. David Borders (collectively, the "Individual Defendants") are principals of Borders & Borders, PLC.

## FACTS AND ALLEGATIONS

9. From at least 2006 until at least 2011, Defendants entered into and operated nine joint ventures with several owners and managers of local real estate and mortgage brokerage companies (collectively, the "Joint Venture Partners"). The joint ventures are referred to herein collectively as the "Title LLCs." The Title LLCs were: (1) Associates Home Title; LLC; (2) Catalyst Title, LLC; (3) East Title, LLC; (4) KMT Title, LLC; (5) Leo Title Services, LLC; (6) My Kentucky Home Title, LLC; (7) Opia Title, LLC; (8) TBD Title, LLC; and (9) WS Title, LLC.

10. The Individual Defendants collectively owned approximately 50% of each Title LLC.

11. The announced purpose of the Title LLCs was to serve as title insurance agents.

12. The Title LLCs entered into contracts to serve as agents for two of the title insurance companies for which Borders & Borders, PLC also served as an agent.

13. In most instances, the initial capitalization for the Title LLCs was provided by the Defendants and comprised of only enough funds to cover the Title LLCs' Errors and Omissions insurance. On information and belief, in most instances the Joint Venture Partners did not contribute funds for the initial capitalization of the Title LLCs.

14. Each Title LLC had only one staffer, a single independent contractor simultaneously shared by all nine Title LLCs and concurrently employed by Borders & Borders, PLC.

15. The Individual Defendants and employees or agents of Borders & Borders, PLC managed the business affairs of the Title LLCs.

16. The nine Title LLCs did not have their own office spaces, email addresses, or phone numbers and could not function independently from Borders & Borders, PLC.

17. The nine Title LLCs did not advertise themselves to the public.

18. All of the Title LLCs' business was referred by Borders & Borders, PLC.

19.     Pursuant to an arrangement, agreement, or understanding between the Defendants and the Joint Venture Partners, when a Joint Venture Partner or an agent or employee thereof made an initial referral of closing or other settlement services to Borders & Borders, PLC involving a federally related mortgage loan, the Defendants arranged for the title insurance for the underlying transaction to be issued through the Title LLC co-owned by the Joint Venture Partner who referred, or whose employee or agent referred, the settlement business to Borders & Borders, PLC.  Profits generated by the Title LLC as a result of the Defendants' title insurance referrals were then split between the Individual Defendants and the referring Joint Venture Partner, thereby compensating the Joint Venture Partner for the referral.

20.     The Title LLCs did not perform substantive title work.  Rather, Borders & Borders, PLC: (1) searched and reported on the condition of the title; (2) reviewed the report of title and determined the conditions and exceptions to be included in a title commitment to issue a policy of title insurance as an authorized agent of a title insurance company; (3) cleared or resolved the conditions listed on the title commitment to issue a title insurance policy; (4) prepared an insurance closing letter; (5) prepared the title insurance commitment; and (6) conducted the closing.

21.     Pursuant to the title insurance agent agreements between the Title LLCs and the title insurance companies on whose behalf they acted, 20% of the title insurance premium was paid by the Title LLCs to the title insurance companies. The Title LLCs retained the entire remaining 80% of the premium, even though Borders & Borders, PLC performed the substantive title work and the Title LLCs' work was limited to clerical tasks performed by the shared contractor.

22.     The Title LLCs paid substantial distributions couched as returns on ownership interest to the Joint Venture Partners and to the Individual Defendants.

23.     The Individual Defendants received substantial payments from the Title LLCs, purportedly based on their ownership interests in the Title LLCs.

24. Borders & Borders, PLC received substantial fees for closing services it provided to customers referred from the Joint Venture Partners or their employees or agents.

25. When a Joint Venture Partner or its employee or agent referred a customer to Borders & Borders, PLC, the law firm sometimes provided a disclosure form notifying customers of a business affiliation between a Joint Venture Partner and the principals of Borders & Borders, PLC. Likewise, when Borders & Borders, PLC referred a customer to a Title LLC, the law firm sometimes used a disclosure form intended to notify customers of a business affiliation between the owners of the law firm and the Title LLC. The standard Affiliated Business Arrangement disclosure form ("AfBA Disclosure") used by the Joint Venture Partners and Borders & Borders failed to disclose ownership percentages and failed to include a customer acknowledgement section as specified in the applicable RESPA regulation, 12 C.F.R. § 1024.15(b), Appendix D ("Appendix D"). The AfBA Disclosure also modified language and typography from the model form set forth in Appendix D. In addition, the AfBA Disclosure was provided at closing and not at the time of the referral as required under 12 U.S.C. § 2607(c)(4); 12 C.F.R. § 1024.15.

26. In 2011, upon receipt of an information request from HUD providing notice of a pending investigation, Defendants dissolved most of the Title LLCs, and the Title LLCs ceased issuing title insurance policies. Defendants remain settlement service providers in the position to refer and accept referrals of settlement services.

**RESPA**

27. Congress enacted RESPA in 1974 as a response to the abuses in the real estate settlement process. Congress found that kickbacks and unearned fees in the settlement process resulted in unnecessarily high settlement charges. Thus, RESPA prohibits, among other things, the giving and receiving of "any fee, kickback or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement

5

service involving a federally related mortgage loan shall be referred to any person." 12 U.S.C. § 2607(a).

## COUNT I

28. The allegations in paragraphs 1-27 are incorporated here by reference.

29. From at least 2006 to at least February 2011, by arranging for the Title LLCs to pay distributions couched as returns on ownership interests to the Joint Venture Partners, Defendants gave a fee, kickback, or thing of value pursuant to an agreement or understanding that business incident to or a part of a real estate settlement service involving a federally related mortgage loan would be referred to Borders & Borders, PLC, in violation of RESPA, 12 U.S.C. § 2607(a).

30. The distributions referenced in the preceding paragraph are not subject to the "safe harbor" for affiliated business arrangements in 12 U.S.C. § 2607(c)(4) – which authorizes certain referrals to providers of settlement services – because the Title LLCs did not constitute bona fide "providers of settlement services" within the meaning of RESPA. The payments they made to the Individual Defendants and the Joint Venture Partners did not constitute bona fide returns on ownership interest. The "safe harbor" in 12 U.S.C. § 2607(c)(4) is also inapplicable because the AfBA Disclosures provided to referred customers did not conform to 12 C.F.R. part 1024, Appendix D, represent a threat to the basic purpose of the disclosure, and were not provided at the time of referral. 12 C.F.R. § 1024.15(b)(1).

## THIS COURT'S POWER TO GRANT RELIEF

31. RESPA and the CFPA empower this Court to grant appropriate relief for violations of 12 U.S.C. § 2607(a). 12 U.S.C. § 2607(d); 12 U.S.C. § 5565(a).

**PRAYER FOR RELIEF**

32. Wherefore, Plaintiff Consumer Financial Protection Bureau, pursuant to Section 1054 of the CFPA, 12 U.S.C. § 5564; Section 8 of RESPA, 12 U.S.C. § 2607; and the Court's own powers to grant legal or equitable relief, requests that the Court:

   a. permanently enjoin Defendants from committing future violations of Section 8 of RESPA, 12 U.S.C. § 2607;

   b. enjoin Defendants from creating and entering into new affiliated business arrangements;

   c. enjoin Defendants from restarting the Title LLCs;

   d. enjoin Defendants from distributing any remaining Title LLC funds to the Joint Venture Partners or to Defendants to the extent those funds are derived from transactions covered by RESPA;

   e. order disgorgement of all income, revenue, proceeds, or profits received by Defendants in connection with settlement services provided as a result of or in connection with a referral made in violation of RESPA, including distributions paid by the Title LLCs and fees paid by customers referred to the Defendants for closing services;

   f. award Plaintiff's costs against Defendants; and

   g. award additional relief as the Court may determine to be just and proper.

Dated:  October 24, 2013              Respectfully submitted,

                                      Ori Lev
                                      *Deputy Enforcement Director*
                                      (DC Bar No. 452565)

                                      Frank Kulbaski
                                      *Assistant Litigation Deputy*
                                      (DC Bar No. 438917)

8

<div style="margin-left: 40%;">

<u>/s/ *Kirsten Ivey-Colson*</u>
Kirsten Ivey-Colson
(Email: kirsten.ivey-colson@cfpb.gov)
(Phone: 202-435-7354)
(DC Bar No. 470102)

Jobe G. Danganan
(Email: jobe.danganan@cfpb.gov)
(Phone: 202-435-7366)
(NY Bar No. 4309373)

*Enforcement Attorneys*
Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552
Fax: (202) 435-7722

Attorneys for Plaintiff
Consumer Financial Protection Bureau

</div>