UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| Consumer Financial Protection Bureau,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>Borders & Borders, PLC; Harry Borders;<br>John Borders, Jr.; and J. David Borders,<br><br>　　　　Defendants. | No. 3:13CV-1047-H<br>*Electronically Filed* |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
<u>MOTION FOR PROTECTIVE ORDER</u>**

In response to Defendants' requests for documents, interrogatories, and requests for admissions, the Consumer Financial Protection Bureau ("Bureau") has provided Defendants with all non-privileged documents and information potentially relevant to its allegations that Defendants violated Section 8 of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2607 ("RESPA") and its implementing regulations, 12 C.F.R. part 1024, or Defendants' defenses. Defendants now seek to engage Bureau counsel in a test of memory by serving a notice, under Fed. R. Civ. P. 30(b)(6), that would require Bureau counsel to identify in a deposition all facts, documents, witness statements, or testimony related to 38 deposition topics (hereinafter referred to as the 30(b)(6) notice, a copy of which is attached as Exhibit 1). A deposition is not the appropriate discovery tool to obtain this information, substantially all of which, as discussed below, the Bureau has already provided in its written responses. In addition to its written responses, the Bureau has produced 72,024 pages of documents to Defendants.

Because the Rule 30(b)(6) notice is duplicative, unduly burdensome and intended to harass, would require Bureau counsel to testify, seeks irrelevant information, and seeks

information protected by attorney work product doctrine, deliberative process or law enforcement privileges, the Bureau respectfully requests the Court grant the Bureau's motion for protective order and quash Defendants' Rule 30(b)(6) notice.

## Argument

### I. Standard of Review

Under Rule 26(c), a party from whom discovery is sought may move for, and for good cause the court may issue, a protective order forbidding the requested discovery or prescribing a discovery method other than the one selected by the party seeking discovery. Fed. R. Civ. P. 26(c). It is within the sound discretion of the trial court to establish the scope of discovery. *Coleman v. Am. Red Cross,* 23 F.3d 1091, 1096 (6th Cir. 1994) (citation omitted). If "proof of relevancy or need is not established or if discovery would nevertheless be unreasonable, oppressive, annoying, or embarrassing, or otherwise unduly injurious, discovery should be denied." *Jackson v. E-Z-GO Div. of Textron, Inc.*, No. 3:12-CV-154-TBR, 2015 WL 4464098, at *2 (W.D. Ky. July 21, 2015); Fed. R. Civ. P. 26(c) (Court may issue an order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense). The Court must also limit discovery when "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C). Further, the Court must limit the frequency or extent of discovery when "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." *Id*. Defendants' 30(b)(6) notice to the Bureau implicates each of the reasons this Court is empowered to, and should, grant a protective order.

## II. The 30(b)(6) deposition imposes an undue burden.

Preparing a witness – or witnesses – to testify about the 30(b)(6) notice's 38 topics would impose an undue burden on the Bureau. Under Rule 30(b)(6), the deponent must make a conscientious good-faith effort to designate the persons having knowledge of the matters sought by the party noticing the deposition and prepare those persons in order that they can answer fully, completely, unevasively, the questions posed. *SEC v. Morelli*, 143 F.R.D. 42, 45 (S.D.N.Y. 1992) (citations omitted); *see* Fed. R. Civ. P. 30(b)(6). Defendants' notice would require the Bureau to identify and produce for the deposition a person who could testify on the Bureau's behalf and is knowledgeable about 38 categories of information. To properly prepare for merely the first two of 38 deposition topics, the Bureau's witness would need to memorize for each of hundreds of real estate closings:

> The subject of the transaction; the date of the transaction; the parties to the transaction; the referring party; the referred party; the amount of the kickback; what services the Borders provided in connection with the transaction; which Title LLC was involved in the transaction; which Joint Venture Partner was involved in the transaction; whether and when the Borders provided an affiliated business arrangement disclosure for the transaction; the content of each affiliated business arrangement disclosure, if provided; the price of title insurance a consumer purchased in connection with the transaction; who issued title insurance for each transaction; what work the Defendants, Title LLCs, or Joint Venture Partners performed in connection with each transaction; and the facts, documents, statements, and testimony related to each transaction.

Depositions under 30(b)(6) "are not meant to be traps in which the lack of an encyclopedic memory commits an organization to a disadvantageous position." *Brown v. W. Corp.*, No. 8:11CV284, 2014 WL 1794870, at *1 (D. Neb. May 6, 2014). It is not reasonable to expect any individual to remember every fact in an investigative file. *See Equal Employment Opportunity Comm'n v. Am. Int'l Grp., Inc.*, No. 93 CIV. 6390(PKL)RLE, 1994 WL 376052, at *3 (S.D.N.Y. July 18, 1994) ("Rule 30(b)(6) is not designed to be a memory contest."). And where, as here, the party seeking the information already has the entire non-privileged portion of the investigative file, such party does not have a legitimate need to inquire as to its contents. *See id*. As permitted under Rule 26(b)(1), this Court should grant the protective order to quash discovery that would impose a burden and expense that outweighs its likely benefit.

### III. Defendants have had ample opportunity to obtain the information they seek, and the 30(b)(6) deposition is unreasonably cumulative and duplicative.

Defendants' deposition notice poses twenty-two contention topics[1] that would require either an attorney to testify or a non-attorney working with the Bureau's attorneys to testify about the Bureau's legal positions. Interrogatories and document requests were the proper tool for Defendants to obtain such information. *See Morelli*, 143 F.R.D. at 48 (barring 30(b)(6) deposition of SEC, granting defendant leave to serve contention interrogatories); *SmithKline Beecham Corp. v. Apotex Corp.*, No. 99-CV-4304, 2004 WL 739959, *4 (E.D. Pa. Mar. 23, 2004) (denying motion to compel 30(b)(6) deposition; finding "[d]efendants could readily have obtained the same information [requested through deposition] in a more efficient manner by propounding 'standard' interrogatories upon its opponent"); *CFPB v. The Mortgage Law Group, LLP*, 3:14-cv-513-bbc (W.D. Wis. July 30, 2015) (Order quashing 30(b)(6) deposition; requiring supplemental answers to interrogatories) (attached as Exhibit 2). In fact, Defendants have sought

---

[1] Numbers 2-16, 18, 20, 22, 23, 25, and 38.

4

and obtained the documents and information they seek through interrogatories, document requests, and requests for admission.[2]

Under Rule 26(b)(2)(C)(i), the Court must limit discovery where it is duplicative. As set forth in the attached Exhibit 4, most of the 30(b)(6) deposition topics are duplicative of interrogatories and document requests Defendants have previously propounded, and for which the Bureau has answered and provided documents. The Bureau "is not required to have counsel marshal all of its factual proof and prepare a witness to be able to testify on a given [claim]." *See In re Independent Sales Organizations Antitrust Litigation*, 168 F.R.D. 651, 654 (D. Kan. 1996) (internal citation omitted) (granting protective order and quashing 30(b)(6) notice). The Rules preclude proponents of discovery from wielding the discovery process as a club by propounding requests compelling the recipient to assume an excessive burden. *See United States v. District Council of New York City,* 1992 WL 208284 at *15 (S.D.N.Y. Aug. 19, 1992) ("However liberal the discovery rules are, they could not reasonably be construed as requiring a party in a case such as this to make a Rule 30(b)(6) deponent, who is an investigator assisting counsel, the repository of all information known to counsel so that she could then provide it to an adversary."). Defendants have had ample opportunity to obtain the information they need and they are now the in the possession of documents and information necessary to defend this action.

In addition to being duplicative, requiring counsel to provide binding testimony as to all facts, documents, witness statements, and testimony concerning 38 topics would be inherently unreliable. As the Supreme Court stated in *Hickman v. Taylor*, "forcing an attorney to repeat or write out all that witnesses have told him and to deliver the account to his adversary gives rise to

---

[2] See Declaration and Certification of Kirsten Ivey-Colson, attached as Exhibit 3.

grave dangers of inaccuracy and untrustworthiness." 329 U.S. 495, 512-513 (1947). The court found:

> No legitimate purpose is served by such production. The practice forces the attorney to testify as to what he remembers or what he saw fit to write down regarding witnesses' remarks. Such testimony could not qualify as evidence; and to use it for impeachment or corroborative purposes would make the attorney much less an officer of the court and much more an ordinary witness. The standards of the profession would thereby suffer.

*Hickman v. Taylor*, 329 U.S. at 513. The Supreme Court's logic in *Hickman*, which gave rise to the attorney work product doctrine, is equally applicable here.

### IV. The 30(b)(6) notice seeks testimony outside the scope of permissible discovery.

#### A. The 30(b)(6) notice impermissibly seeks to infringe on protected attorney work product.

The investigation in this matter was conducted by Bureau attorneys and by Bureau employees working under the direction of attorneys.[3] In this case, the 30(b)(6) deposition would necessarily involve the testimony of attorneys assigned to the case, or require those attorneys to prepare witnesses to testify as to all facts, documents, statements, and testimony concerning 38 topics. Even if a non-attorney witness were designated, Bureau counsel who conducted the investigation would have to prepare him or her, and that preparation would include disclosure of Bureau attorneys' legal and factual theories. Courts recognize that taking testimony from employees who take direction from attorneys amounts to seeking the practical equivalent of an examination of the attorneys. *See SEC v. Buntrock*, 217 F.R.D. 441, 444 (N.D. Ill. 2003) (finding 30(b)(6) notice to SEC was an inappropriate attempt to depose opposing counsel and to delve into the theories and opinions of its attorneys); *SEC v. Rosenfeld*, No. 97 Civ. 1467, 1997 WL 576021, at *4 (S.D.N.Y. Sept. 16, 1997) (granting protective order; noting that 30(b)(6) notice to

---

[3] Declaration of Kirsten Ivey-Colson, ¶ 3.

6

the SEC, where investigation was conducted by SEC attorneys and SEC employees working under the direction of attorneys, would necessarily involve testimony of attorneys assigned to the case or require those attorneys to prepare other witnesses to testify); *EEOC v. HBE Corp.*, 157 F.R.D. 465, 467 (E.D. Mo. 1994) (granting motion for protective order where party served 30(b)(6) notice directing plaintiff to designate person "having knowledge of the allegations in the complaint").

Taking opposing counsel's deposition has long been discouraged. *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). "Undoubtedly, counsel's task in preparing for trial would be much easier if he could simply dispense with interrogatories, document requests, and depositions of lay persons, and simply depose opposing counsel in an attempt to identify the information that opposing counsel has decided is relevant and important to his legal theories and strategy." *Id*. However, the practice is discouraged because "taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation." *Id*. Discovery from an opposing counsel is "limited to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information ...; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 628 (6th Cir. 2002) quoting *Shelton*, 805 F.2d at 1327. As discussed above, Defendants have already sought and obtained the discovery they seek using other means. To the extent the Bureau has not provided Defendants with the information they seek, it is because the information sought it not relevant or it is privileged, as discussed below.

Having obtained the information they seek in answers to interrogatories and documents, any further information the Defendants could obtain in a deposition would be protected attorney work product. Topics 34 and 35, which would require the Bureau to testify about its answers and objections to interrogatories, reveal that Defendants' true intent is to inquire into the mental processes and strategies of the Bureau. Counsel's mental impressions are entitled special protection. *See* Fed. R. Civ. P. 26(b)(3)(B) (notwithstanding exceptions to work product protection, Court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."). Where, as here, all relevant, non-privileged evidence has been disclosed, the Court should see that Defendants' goal is to learn what the Bureau's attorneys' thinking or strategy may be and should shield those attorneys from having to disclose such thinking and strategy. *See Morelli*, 143 F.R.D. at 46-47 ("the Court is drawn inexorably to the conclusion that Morelli's Notice of Deposition is intended to ascertain how the SEC intends to marshall [*sic*] the facts, documents and testimony in its possession, and to discover the inferences that plaintiff believes properly can be drawn from the evidence it has accumulated").

**B. Defendants' deposition notice seeks information that is not relevant to their claims or defenses.**

Defendants seek information that is not relevant to claims or defenses in this case. For example, deposition topics 8 and 9 would have the Bureau produce a witness to testify about what the Borders should have done differently to avoid liability. A hypothetical discourse about the steps Defendants could have taken, but did not take, has no bearing on the Bureau's claims or Defendants' defenses. Topics 8 and 9 are purely legal questions inappropriate for a 30(b)(6) deposition and could only infringe on the Bureau's attorney work product.

8

Deposition topics 14 and 15 would have the Bureau produce a witness to testify about consumer harm and whether Defendants charged above-market prices for settlement services. In this matter, the Bureau is not seeking restitution for consumers, and consumer harm is not an element of the Bureau's claims or Defendants' defenses. RESPA sought to address Congress's concern over controlled business arrangements. *In re Carter*, 553 F.3d 979, 988 (6th Cir. 2009) (citations omitted) (finding individual plaintiffs had standing under RESPA to impose damages where kickbacks occurred, even where there is no overcharge). Specifically, Congress sought to protect consumers from referrals where "the advice of the person making the referral may lose its impartiality and may not be based on his professional evaluation of the quality of service provided if the referror [*sic*] or his associates have a financial interest in the company being recommended." *Id*. RESPA promotes the "healthy competition generated by independent settlement service providers," and empowers individuals and the government to police the marketplace to create a market-wide deterrent. *Id*. Accordingly, while the Bureau has provided Defendants with all information on which it will rely to demonstrate that consumers were given referrals sullied by kickbacks, the Bureau need not demonstrate further harm than that.

## C. Defendants' deposition notice seeks information that is protected by the deliberative process and law enforcement privileges.

Defendants pose numerous deposition topics that improperly seek to discover the Bureau's deliberative process and law enforcement techniques and procedures. In particular, topics 17, 19, 21, 24, and 26-31 seek information about the Bureau's internal decision-making process. This information is protected by the deliberative process privilege. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) (deliberative process privilege protects "the decision making processes of government agencies"). The deliberative process privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each

9

remark is a potential item of discovery and front page news, and its object is to enhance 'the quality of agency decisions by protecting open and frank discussion among those who make them within the Government.'" *DOI v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (internal citations omitted).

To qualify for the deliberative process privilege, information must be: (1) predecisional, meaning it was "prepared in order to assist an agency decision maker in arriving at his decision," and (2) deliberative, meaning its release "would expose an agency's decision-making process in such a way as to discourage candid discussions within the agency and thereby undermine the agency's ability to perform its functions." *Hongsermeier v. Comm'r of Internal Revenue*, 621 F.3d 890, 904 (9th Cir. 2010) (citations and internal quotation marks omitted); *see Schell v. U.S. Dept. of Health & Human Services*, 843 F.2d 933, 940 (6th Cir. 1988).[4] The Bureau has satisfied the requirements for asserting the deliberative process privilege by submitting a formal claim of privilege from the Bureau's Director of the Office of Enforcement, Anthony Alexis, attached as Exhibit 5.

Topics 17, 19, 21, 24, and 26-31also request information that is protected by the law enforcement and deliberative process privileges. The purpose of the law enforcement privilege is "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *In re Dep't of Investigation*, 856 F.2d 481, 484 (2d Cir. 1988). Answering topic 31 would require the Bureau to disclose its pre-litigation decision-making process and its internal policies, effectively providing a road map for law violators seeking to evade a law enforcement

---

[4] The deliberative process privilege includes not only documents, but also oral testimony. *See Elkem Metals Co., et al. v. United States of America,* 126 F. Supp. 2d 567 (Ct. Int'l Trade 2000); *KFC National Mgmt. Corp. v. NLRB*, 497 F.2d 298, 305 (2d Cir. 1974).

action. At issue is whether Defendants violated the law, not how the Bureau or HUD chose to conduct its investigation.

## Conclusion

For the reasons stated above, the Court should allow the Bureau's protective order and quash Defendants' Rule 30(b)(6) deposition notice.

                           Respectfully submitted,

                           CONSUMER FINANCIAL PROTECTION BUREAU

                           By its attorneys,

                           /s/ *Kirsten Ivey-Colson*
                           Kirsten Ivey-Colson
                           Jonathan B. Engel
                           Joshua B. Orenstein
                           Consumer Financial Protection Bureau
                           1700 G Street, NW
                           Washington, D.C. 20552
                           Kirsten.Ivey-Colson@cfpb.gov
Dated: January 29, 2016          (202) 435-7354