UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CONSUMER FINANCIAL PROTECTION
BUREAU                                                                                    PLAINTIFF

v.                                                          CIVIL ACTION NO. 3:13-CV-01047-CRS-DW

BORDERS & BORDERS, PLC, HARRY
BORDERS, JOHN BORDERS, JR., & J.
DAVID BORDERS                                                                        DEFENDANTS

Memorandum Opinion

I.   Introduction

This matter is before the Court on the motion of Defendants Borders & Borders, PLC, Harry Borders, John Borders, Jr., and J. David Borders (collectively, "Borders & Borders") for summary judgment under Federal Rule of Civil Procedure 56(a), ECF No. 128. Plaintiff the Consumer Financial Protection Bureau ("the Bureau") responded, ECF No. 137. Borders & Borders replied, ECF No. 146.

The Bureau filed a motion for partial summary judgment, ECF No. 129. Borders & Borders responded, ECF No. 140. The Bureau replied, ECF No. 148.

Borders & Borders also moved to strike the declarations of Kirsten Ivey-Colson and Ryan Thomas, which were submitted in support of the Bureau's motion for partial summary judgment, ECF No. 138. The Bureau responded, ECF No. 144. Borders & Borders replied, ECF No. 151.

Because these motions concern similar facts and issues, the Court will address them in a single memorandum opinion and order. For the reasons explained below, the Court will grant Borders & Borders' motion for summary judgment. The Court will deny the Bureau's motion for

1

partial summary judgment. The Court will also deny Borders & Borders' motion to strike the declarations as moot.

II. Background

A. The Regulatory Framework of the Real Estate Settlement Procedures Act (RESPA)

Congress enacted the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601, *et seq.*, in 1974. *Carter v. Welles-Bowen Realty, Inc.*, 736 F.3d 722, 725 (6th Cir. 2013). RESPA regulates real estate "settlement services." *Id*. Settlement services include checking a real estate title for its validity, obtaining a pest control company to check for termites on the property, and retaining an attorney to check the sales contract for errors. *Id*.

RESPA's leading provision, Section 8(a), prohibits people from giving and receiving "any fee, kickback, or thing of value pursuant to any agreement or understanding . . . that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred in any person." 12 U.S.C. § 2607(a). Persons who violate the anti-kickback provision of RESPA face up to one year in prison, civil liability, and/or public enforcement actions. *Id*. § 2607(d). While the United States Department of Housing and Urban Development (HUD) once was responsible for public enforcement actions under RESPA, later legislation transferred this role to the Bureau. *Carter*, 736 F.3d at 725.

In 1983, in response to uncertainty about RESPA's application to referrals among affiliated companies, Congress enacted a safe harbor provision. *Id*. This provision shelters "affiliated business arrangements." 12 U.S.C. § 2607(c)(4). To qualify for the safe harbor provision, the business arrangement must be disclosed to the person being referred to an affiliated business, "such person is not required to use any particular provider of settlement

services," and "the only thing of value that is received from the arrangements . . . is a return on the ownership interest or franchise relationship." *Id*. The safe harbor provision further provides:

> [T]he following shall not be considered a violation of clause (4)(B): (i) any arrangement that requires a buyer, borrower, or seller to pay for the services of an attorney, credit reporting agency, or real estate appraiser chosen by the lender to represent the lender's interest in a real estate transaction, or (ii) any arrangement where an attorney or law firm represents a client in a real estate transaction and issues or arranges for the issuance of a policy of title insurance in the transaction directly as agent or through a separate corporate title insurance agency that may be established by that attorney or law firm and operated as an adjunct to his or its law practice.

*Id*. § 2607(c).

### B. Borders & Borders

Borders & Borders is a family-owned law firm that primarily performs residential real estate closings in Louisville, Kentucky. Borders & Borders' Mem. Supp. Mot. J. on the Pleadings 4, ECF No. 20-1. J. David Borders established the law firm in 1971. *Id*. His sons, Harry Borders and John Borders, Jr., currently manage and operate the law firm. *Id*. Borders & Borders employs six attorneys and nineteen staff members. John D. Borders, Jr. & Harry B. Borders Decl. ¶ 2, ECF No. 128-3.

Lenders hire Borders & Borders to prepare real estate conveyance and mortgage documents, and to conduct real estate closings. Borders & Borders' Mem. Supp. Mot. J. Pleadings 4, ECF No. 20-1. Borders & Borders is also an authorized agent to issue title insurance policies for First American Title Insurance Company, Old Republic National Title Insurance Company, Chicago Title Insurance Company, and Commonwealth Land Title Insurance Company. John D. Borders, Jr. & Harry B. Borders Decl. ¶ 2, ECF No. 128-3. The law firm is a member of the American Land Title Association. John D. Borders, Jr. & Harry B. Borders Decl. ¶ 2, ECF No. 128-3.

C. <u>Borders & Borders' Relationship with the Title LLCs</u>

In 2006, Borders & Borders established joint ventures with principals of nine real estate service providers in Louisville, *id*. ¶ 26, including (1) Associates Home Title, LLC, (2) Catalyst Title, LLC, (3) East Title, LLC, (4) KMT Title, LLC, (5) Leo Title, LLC, (6) My Kentucky Home Title, LLC, (7) Opia Title, LLC, (8) TBD Title, LLC, and (9) WS Title, LLC. Borders & Borders' Resp. HUD Info. Request 2, ECF No. 129-5. Harry Borders was mostly responsible for the creation of these nine joint ventures (the "Title LLCs"). Harry Borders Dep. 17, ECF No. 129-10. Harry Borders also identified at least one principal as a good match for a joint venture partner. John D. Borders, Jr. Decl. 25, ECF No. 129-8.

One of the joint venture partners testified that Borders & Borders described the Title LLCs as partnership agreements through which real estate title insurance would be offered to home buyers. Parks Dep. 7, ECF No. 129-19. More specifically, the Title LLCs served as title insurance agencies in real estate closings when the lenders did not maintain an internal, lender-owned title agency. John D. Borders, Jr. & Harry B. Borders Decl. ¶ 27, ECF No. 128-3. When Borders & Borders closed on a transaction for a lender without an affiliated title agency, Borders & Borders referred the title insurance underwriting to the Title LLC affiliated with the real estate agent involved in the underlying transaction. *Id*. ¶ 35.

The relationship between Borders & Borders and the Title LLCs was disclosed to the borrowers and buyers when Borders & Borders referred them to the Title LLCs to obtain title insurance. *Id*. ¶ 37. Borders & Borders gave an Affiliated Business Arrangement Disclosure Form ("the standard disclosure form") to borrowers and buyers at the closings. *Id*. ¶ 40. The borrowers and buyers had 30 days from the date of the closings to decide whether to purchase owner's title insurance from the Title LLCs. *Id*. Between October 24, 2009 and February 2011,

the Title LLCs issued more than 1,000 title insurance policies for more than 700 real estate closings. *Id*. ¶ 38.

David Borders, Harry Borders, and John Borders, Jr. were 50% owners of each of the Title LLCs. *Id*. ¶ 29. The venture partners held the remaining 50% ownership in the Title LLCs. *Id*. One venture partner explained that the members of her affiliated Title LLC, including Borders & Borders, would meet once a year to complete necessary tax-related paperwork. Parks Dep. 8, ECF No. 129-19.

Each Title LLC had a written operating agreement, was authorized to conduct business in Kentucky, was approved by either Chicago Title Insurance Company or Old Republic National Title Insurance to issue title insurance policies, was subject to audit, had a separate operating banking account, had a separate escrow banking account, maintained an errors & omissions insurance policy, issued lender's and owner's policies, had operating expenses, generated revenue, made profit distributions, filed fax returns, issued IRS K-1 forms, and were solvent. John D. Borders, Jr. & Harry B. Borders Decl. ¶ 30, ECF No. 128-3.

All the Title LLCs were staffed by a single agent, Danetta Mattingly. *Id*. ¶ 32. Mattingly performed the post-closing services that the staff of a title insurance agency owned by a lender would have performed if the lender had retained an internal, lender-owned title insurance agency. *Id*. ¶¶ 33–35. Mattingly worked from her home office. *Id*. ¶ 32. According to Borders & Borders, she was categorized as an independent contractor. *Id*. The Title LLCs compensated Mattingly for her work and any incidental expenses with a flat $25.00 fee for each title insurance policy that she issued. *Id*.

D. <u>Alleged Violations of RESPA and Procedural History</u>

On February 23, 2011, HUD advised Borders & Borders that the law firm was being investigated for potential violations of RESPA's anti-kickback provision. *Id*. ¶ 56. Upon receiving this notice of investigation from HUD, the Title LLCs ceased operating and were dissolved. Answer ¶ 25, ECF No. 5.

In April 2012, the Bureau advised Borders & Borders that it, rather than HUD, would be continuing the investigation into alleged violations of RESPA. John D. Borders, Jr. & Harry B. Borders Decl. ¶ 57, ECF No. 128-3. In October 2013, the Bureau filed suit against Borders & Borders. *Id*. ¶ 62. The Bureau alleges that Borders & Borders' arranging for the Title LLCs to pay distributions to the joint venture partners for their participation as members and/or owners constituted a fee, kickback, or thing of value in violation of section 8(a) of RESPA. Compl. ¶ 29, ECF No. 1. The Bureau further asserts that the distributions to the joint venture partners are not subject to the safe harbor provisions in section 8(c)(4) of RESPA because the Title LLCs were not bona fide "providers of settlement services." *Id*. ¶ 30. The Bureau also maintains that the distributions to the joint venture partners are not protected by the safe harbor provisions because the standard disclosure form given to borrowers and buyers did not conform to the requirements of 12 C.F.R. § 1024, represented a threat to the basic purpose of disclosure, and were not provided at the time of referral. *Id*.

III. <u>Borders & Borders' and the Bureau's Motions for Summary Judgment</u>

Borders & Borders and the Bureau have now filed motions for summary judgment. Borders & Borders' Mot. Summ. J. 1, ECF No. 128; Bureau's Mot. Summ. J. 1, ECF No. 129. The Court will first address Borders & Borders' motion for partial summary judgment and then will address any remaining issues raised by the Bureau's motion for partial summary judgment.

Before granting a motion for summary judgment, a court must find that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of establishing the nonexistence of any issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party satisfies this burden by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). When resolving a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

A. <u>Borders & Borders' Motion for Summary Judgment</u>

Borders & Borders argues that the Court should grant summary judgment on the Bureau's claims because (1) the Bureau failed to show that the Title LLCs arrangement violated Section 8(a) of RESPA, (2) the operation of the Title LLCs satisfied the "affiliate business arrangement" permitted by Section 8(c)(4) of RESPA, (3) the Title LLCs and it performed settlement services for fair market compensation, (4) there is no viable remedy for the alleged violations of RESPA, and (5) the complaint is an ultra vires act arising out of the unconstitutionality of the Bureau's structure. Borders & Borders' Mem. Supp. Mot. Summ. J. 25–46, ECF No. 128-1.

> *i. Whether the Court should grant summary judgment because the Bureau failed to show that the Title LLCs arrangement violated Section 8(a) of RESPA*

Turning to the first of these arguments, Borders & Borders argues that the Court should grant summary judgment and dismiss the complaint because the Bureau failed to satisfy its burden of demonstrating the core elements of a Section 8(a) violation of RESPA regarding its

7

arrangement with the Title LLCs. *Id.* at 25–30. The Bureau contends in opposition that it provided sufficient evidence to demonstrate that Borders & Borders' arrangement with the Title LLCs violated Section 8(a) and that Borders & Borders provided no satisfactory evidence showing otherwise. Bureau's Resp. Opp. Mot. Summ. J. 12–25, ECF No. 137.

As previously explained, Section 8(a) of RESPA prohibits people from giving and receiving "any fee, kickback, or thing of value pursuant to any agreement or understanding . . . that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred in any person." 12 U.S.C. § 2607(a). To establish that the defendant violated of Section 8(a) of RESPA, the plaintiff must provide evidence establishing the following three elements: "(1) a payment or a thing of value; (2) made pursuant to an agreement to refer settlement business; and (3) an actual referral." *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 427 (6th Cir. 2009) (formatting altered). Additionally, the transaction must involve a federally-related mortgage loan. *See* 12 U.S.C. § 2607(a).

The Bureau demonstrated that the joint venture partners received a thing of value from Borders & Borders. A thing of value is broadly defined as "any payment, advance, funds, loan, service, or other consideration." *Id.* § 2602(2). The evidence reveals that the joint venture partners, at minimum, were compensated for their role in the management and/or ownership of the Title LLCs. Two joint venture partners testified that they would receive some form of compensation only when Borders & Borders assigned title insurance business to their affiliated Title LLCs. Tague Dep. 29, ECF No. 129-11; Shaikun Dep. 18, ECF No. 129-12. Another joint venture partner similarly affirmed that the Title LLC would make a distribution only after Borders & Borders assigned it title insurance work. Parks, Jr. Dep. 30, ECF No. 128-17.

The Bureau also carried its burden of showing that the loans and compensation that the venture partners received were made pursuant to an agreement to refer settlement business to Borders & Borders. RESPA's regulation X provides, "An agreement or understanding for the referral of business incident to or part of a settlement service need not be written or verbalized but may be established by a practice, pattern or course of conduct." 12 CFR § 1024.14(e). Although the lenders retained the ultimate decision on which closing attorney would perform settlement services, they generally left the choice to the real estate agent or buyer. Harry Borders Dep. 44, ECF No. 129-10. Peters Dep. 10–11; ECF No. 129-37. And several joint venture partners testified that they would routinely refer settlement business to Borders & Borders, unless the customer had a different preference for the closing attorneys. *See* Parks Dep. 12, ECF No. 129-19 (explaining that she would "almost always" use Borders & Borders as the closing agent unless the customer had a different preference); Peters Dep. 10, ECF No. 129-37 (explaining that she would use Borders & Borders or two other closing attorneys unless a customer had a preference); Simms Dep. 13, ECF No. 129-13 (stating that he frequently recommended Borders & Borders to perform a closing). Two joint venture partners also testified that they would encourage other real estate agents to refer settlement services to Borders & Borders. Parks Dep. 16, ECF No. 129-20; Ballard Dep. 25, ECF No. 129-38. This ongoing practice indicates an agreement to refer settlement services to Borders & Borders.

In addition to demonstrating that the joint venture partners received a thing of value under an agreement to refer settlement business, the Bureau demonstrated that the joint venture partners made actual referrals of settlement services to Borders & Borders. In a response to a CFPB request letter from October 2, 2012, Borders & Borders states that it "was the source for each Title LLC transaction." Borders & Borders Letter 2–3, ECF No. 129-36. The law firm

further writes that in all instances, the settlement business was referred to Borders & Borders as closing attorneys. *Id*. Then, as closing attorneys, Borders & Borders selected the particular Title LLC used for each transaction. *Id*.

Finally, the Bureau met its burden of showing that the referral of settlement business among the Title LLCs and Borders & Borders at issue involved federally-related mortgage loans. In Borders & Borders' response to the Bureau's notice of opportunity to respond and advise, Borders & Borders admitted that RESPA only applies to federally-related mortgage loans and that there were 573 transactions involving title insurance that are subject to RESPA. Borders & Borders Not. Opp. Resp. 5–6, ECF No. 129-22.

In sum, the Bureau carried its burden of demonstrating that Borders & Borders violated Section 8(a) of RESPA through its arrangement with the Title LLCs. The Court thus declines to grant Borders & Borders' motion for summary judgment based on the meritless argument that the Bureau failed to prove a Section 8(a) violation.

> *ii. Whether summary judgment should be granted because Borders & Borders' operation of the Title LLCs satisfied the "affiliated business arrangement" permitted by Section 8(c)(4) of RESPA*

Borders & Borders alternatively maintains that, even if it violated Section 8(a) of RESPA, summary judgment should still be granted because the operation of the Title LLCs satisfies the elements of an "affiliated business arrangement," which is permitted by RESPA's safe harbor provision, Section 8(c)(4). Borders & Borders' Mem. Supp. Mot. Summ. J. 30–41, ECF No. 128-1. The Bureau maintains that Borders & Borders' reliance on Section 8(c)(4) of RESPA as a defense fails as a matter of law. Bureau's Resp. Opp. Mot. Summ. J. 25–36, ECF No. 137.

To qualify as an affiliated business arrangement under Section 8(c)(4), the arrangement must meet three conditions: "(1) The person making the referral must disclose the arrangement to the client; (2) the client must remain free to reject the referral; and (3) the person making the referral cannot receive any 'thing of value from the arrangement' other than 'a return on the ownership interest or franchise relationship.'" *Carter v. Welles-Bowen Realty, Inc.*, 736 F.3d 722, 725 (6th Cir. 2013) (citing 12 U.S.C. § 2607(c)(4)).

Based on the record before the Court, Borders & Borders gave its customers timely disclosures when it referred title insurance work to the Title LLCs. A disclosure of the arrangement must be "at or before the time of referral." 12 U.S.C. § 2607(c)(4). The Bureau's representative testified that Borders & Borders systematically provided disclosures to consumers regarding its relationship with the Title LLCs at the closings because that was the first contact that the law firm had with the consumers. Melcher Dep. 29, 49, 105–113, ECF No. 128-16. At the closing, the customer then decided whether to accept the referral of the title insurance to the affiliated Title LLC. Harry Borders Dep. 14, ECF No. 129-10.

The disclosures in the standard disclosure form were also sufficient under RESPA. Section 8(c)(4) does not specify what the disclosures must include— only that the disclosures explain the existence of the affiliated business arrangement. *See* 12 U.S.C. § 2607(c)(4). RESPA does not require "such a rigid and inflexible standard so as to impose civil liability for deviations from the uniform settlement statement which could not possibly impair the effectiveness of such statements." *Vega v. First Fed. Sav. & Loan Ass'n*, 622 F.2d 918, 925 (6th Cir. 1980). The disclosures in the standard disclosure form notified borrowers and buyers that Borders & Borders had a relationship with the title insurance agency and would receive a commission on the insurance policy, there were other title insurance companies available, and the amount that the

title insurance company associated with Borders & Borders would charge for the title insurance. Affiliated Business Arrangement Disclosure 1, ECF No. 128-12. This is sufficient to meet the disclosure standard required by Section 8(c)(4).

Borders & Borders customers were also not required to use the Title LLC. The disclosure form that the law firm gave its customers stated:

> You are not required to use this title insurance agency . . . there are other title insurance agencies available. You are free to inquire with other providers to determine that you are receiving the best services at competitive rates."

*Id*.

The "thing of value" received by members of the Title LLCs was an ownership interest. One joint venture partner testified that he had received only a distribution from the affiliated Title LLC and that he had never received any payment for referring a customer. Parks, Jr. Dep. 30–31, ECF No. 128-17. The distributions were "income distributions calculated from the respective ownership interests of the members." Christensen Decl. ¶ 15, ECF No. 128-11. The distributions were "reflected in schedule K-1s that [an accounting firm] filed with the IRS." *Id*. The Bureau failed to provide evidence showing that the distributions were something other than ownership interests.

Given that Borders & Borders disclosed the relationship with the Title LLCs, the customers could reject the referral, and the Bureau failed to show that the Title LLCs received anything of value beyond their ownership interests, there is no genuine dispute of material fact that Title LLCs arrangement with Borders & Borders qualifies as an affiliated business relationship protected under Section 8(c)(4) of RESPA, and Borders & Borders is entitled to summary judgment as a matter of law. Although no further ruling is necessary for the disposition

of this case, the Court will address Borders & Borders' other arguments in the interest of providing a full and complete record in the event of an appeal being filed.

> *iii. Whether the Court should grant summary judgment because Borders & Borders and the Title LLCs performed settlement services for fair market compensation*

Borders & Borders alternatively asserts that the Court should grant summary judgment because the settlement services at issue were performed for fair market compensation and thus are protected by Sections 8(c)(1) and 8(c)(2) of RESPA. Borders & Borders' Mem. Supp. Mot. Summ. J. 41–42, ECF No. 128-1. Borders & Borders writes, "The rates charged by the Borders and the Title LLCs were fair market value and there is no evidence whatsoever of any excessive charges." *Id*. In response, the Bureau argues that this defense fails because Borders & Borders does not assert that Sections 8(c)(1) and 8(c)(2) apply to the payments that are alleged in the complaint to have been prohibited by Section 8(a). Bureau's Resp. Opp. Mot. Summ. J. 37–42, ECF No. 137.

As noted above, Sections 8(c)(1) and 8(c)(2) of RESPA provide:

> [T]he following shall not be considered a violation of clause (4)(B): (i) any arrangement that requires a buyer, borrower, or seller to pay for the services of an attorney, credit reporting agency, or real estate appraiser chosen by the lender to represent the lender's interest in a real estate transaction, or (ii) any arrangement where an attorney or law firm represents a client in a real estate transaction and issues or arranges for the issuance of a policy of title insurance in the transaction directly as agent or through a separate corporate title insurance agency that may be established by that attorney or law firm and operated as an adjunct to his or its law practice.

12 U.S.C. § 2607(c).

Here, the Bureau alleges in the complaint that the payments prohibited by Section 8(a) of RESPA are distributions paid to the joint venture partners that were given by Borders & Borders by assigning title insurance work to the Title LLCs. Compl. ¶ 2, ECF No. 137. The Bureau does

13

not allege that the Title LLCs received a kickback by charging their customers more than the fair market value of title insurance. *See id*. Accordingly, Borders & Borders cannot rely on Sections 8(c)(1) and 8(c)(2) of RESPA in support of its motion for summary judgment.

> *iv. Whether summary judgment should be granted because there is there is no viable remedy*

Borders & Borders further argues that summary judgment should be granted because all claims lack a viable remedy. Borders & Borders' Mem. Supp. Mot. Summ. J. 42–43, ECF No. 128-1. Borders & Borders explains that the Bureau's request for disgorgement is not viable as a matter of law because the demand exceeds the Bureau's statutory authority. *Id*. at 43–44. Moreover, according to Borders & Borders, the Bureau's demand for an injunction is not viable because "obey the law" injunctions are impermissible and because the Title LLCs ceased operating in 2011. *Id*. at 44. The Bureau maintains in opposition that its requested relief is supported by the law and the facts of the case. Bureau's Resp. Opp. Mot. Summ. J. 37–42, ECF No. 137.

Regarding the Bureau's claim for disgorgement, Section 8(d)(4) of RESPA states, "The Bureau, the Secretary, or the attorney general or the insurance commissioner of any State may bring an action to enjoin violations of this section." 12 U.S.C. § 2607(d)(4). In *Porter v. Warner Holding Co.*, the Supreme Court wrote that a federal district court acting in equity pursuant to a statute may exercise all "inherent equitable powers," unless the statute provides otherwise. 328 U.S. 395, 399 (1946). Disgorgement is a traditional equitable remedy. *United States v. Universal Mgmt. Servs.*, 191 F.3d 750, 760 (6th Cir. 1999). Given that RESPA invokes the equitable

powers of the Court and does not prohibit certain equitable remedies, and that disgorgement is an equitable remedy, the Court may order disgorgement in this case.[1]

Concerning the Bureau's request for an injunction, Federal Rule of Civil Procedure 65(d) requires that an order granting an injunction must "state the reasons why it issued," "state its terms specifically," and "describe in reasonable detail . . . the act or acts restrained or required." Injunctions that generally enjoin the violation of existing law are overly broad and thus are improper. *EEOC v. Wooster Brush Co. Employees Relief Ass'n*, 727 F.2d 566, 576 (6th Cir. 1984) (internal citations omitted).

In the complaint, the Bureau requests an injunction prohibiting Borders & Borders from "committing future violations of Section 8 of RESPA" by (1) "creating and entering into new affiliated business arrangements," (2) "restarting the Title LLCs," or (3) "distributing any remaining Title LLC funds to the Joint Venture Partners or to Defendants to the extent those funds are derived from transactions covered by RESPA." Compl. 7, ECF No. 1. These injunctive requests are tailored to the alleged violations of RESPA occurring under the circumstances of this case.[2] Accordingly, the Bureau's request for an injunction is proper, and Borders & Borders' remedies argument lacks merit.

> *v. Whether the Court should grant summary judgment because the complaint is an ultra vires act arising out of the unconstitutionality of the Bureau's structure*

Finally, solely relying on *PHH Corp. v. CFPB*, 839 F.3d 1 (D.C. Cir. 2016), Borders & Borders contends that the Court should grant summary judgment because the complaint is an

---

[1] Although Borders & Borders maintains that the Bureau should have provided a computation of the disgorgement remedy, Borders & Borders' Mem. Supp. Mot. Summ. J. 43, ECF No. 128-1, Federal Rule of Civil Procedure 26(a) provides only that a party must disclose damages at issue in the case. Fed. R. Civ. P. 26(a)(1)(A)(iii).

[2] Because the Court will grant Borders & Borders' motion for summary judgment, the Court declines to explore the merits of the Bureau's request for an injunction.

ultra vires act. Borders & Borders' Mem. Supp. Mot. Summ. J. 45–46, ECF No. 128-1. The Bureau asserts, however, that Borders & Borders lacks legal support for its contention that the action is ultra vires. Bureau's Resp. Opp. Mot. Summ. J. 46–47, ECF No. 137.

The Court of Appeals for the D.C. Circuit recently vacated and granted an en banc hearing for *PHH Corp*. No. 15-1177, 2017 U.S. App. LEXIS 2733, at *5 (D.C. Cir. Feb. 16, 2017). Because the D.C. Circuit vacated the panel decision in favor of en banc review and the en banc decision has not yet been made, the Court will not decide whether *PHH Corp*. supports Borders & Borders' argument that the action is ultra vires. And because the entirety of Borders & Borders' ultra vires argument rests on *PHH Corp*, *see* Borders & Borders' Mem. Supp. Mot. Summ. J. 45–46, ECF No. 128-1, the Court declines to address Borders & Borders' ultra vires argument at this time.

### B. The Bureau's Motion for Partial Summary Judgment

The Bureau argues that the Court should grant summary judgment in its favor on its claims against Borders & Borders because (1) its arrangement with the Title LLCs violated Section 8(a) of RESPA, (2) Borders & Borders cannot invoke the safe harbor provision for "Affiliated business arrangements" as a defense, (3) Harry Borders, John Borders, and J. David Borders are individually liable for violation Section 8(a) of RESPA, and (4) equitable remedies are appropriate in this case. Bureau's Mem. Supp. Mot. Summ. J. 15–44, ECF No. 129-1. As these arguments have been addressed above in the analysis of Borders & Borders' motion for summary judgment and found unavailing, the Court will deny the Bureau's motion for partial summary judgment.

IV.  Borders & Borders' Motion to Strike the Ivey-Colson and Thomas Declaration

Borders & Borders also moved to strike two declarations. Mot. Strike 3, ECF No. 138. The declarations are by the Bureau's lead counsel, Kirsten Ivey-Colson, regarding a chart it seeks to enter into the record and a declaration by Ryan Thomas, an accountant testifying on behalf of the Bureau. Ivey-Colson Decl. 1, ECF No. 129-34; Thomas Decl. ¶¶ 1–9, ECF No. 129-59. The Bureau submitted the declarations in support of its motion for partial summary judgment. *See id*. As the Bureau's motion for partial summary judgment will be denied, Borders & Borders' motion to strike the declaration will be denied as moot.

V.  Conclusion

The Court will grant Borders & Borders' motion for summary judgment. The Court will deny the Bureau's motion for partial summary judgment. The Court will also deny Borders & Borders' motion to strike as moot. An order will be entered in accordance with this memorandum opinion.

July 12, 2017

**Charles R. Simpson III, Senior Judge**
**United States District Court**